UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSS SCOPELLITI,

     Plaintiff,

v.                              Case No: 8:20-cv-00104-CEH-CPT

JENNIFER MCCLEAN,

     Defendant.

_____/

## **O R D E R**

This cause comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). Doc. 19. Ross Scopelliti ("Plaintiff") responds in opposition. Doc. 25. The Court, having considered the parties' submissions and being fully advised in the premises will deny the Motion.

## I.   **BACKGROUND**[1]

Jennifer McClean ("Defendant") currently owns the residence located at 3212 W. Marlin Ave. in Tampa, Florida 33611 (the "Property"). Doc. 18 ¶5.[2] Plaintiff, who

---

[1] The following statement of facts is derived from the Plaintiff's Verified Amended Complaint and accompanying exhibits. Doc. 18. Because Defendant predicates part of her argument for dismissal upon Rule 12(b)(6), the Court accepts Plaintiff's allegations as true in ruling on the Motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] In the Amended Complaint, under the heading of "General Allegations," Plaintiff sets forth nine paragraphs of general factual allegations, numbered one through nine, before Count I. At the beginning of Count I, Plaintiff restarts the numbering of paragraphs by numbering the first paragraph as paragraph one. Each count of the Amended Complaint then reasserts and realleges "the General Allegation[s] of paragraphs 1-9." Doc. 18 ¶¶2, 31, 46, 68. Given

proceeds *pro se*,[3] presently resides at the Property and possesses the Property in accordance with a lease agreement dated December 27, 2011 (the "Lease Agreement"), entered into by and between Plaintiff and Terence Nero ("Nero"). *Id.* at ¶¶1, 8. The Lease Agreement describes Nero as both "Landlord" and the "Owner/Agent" of the Property. Doc. 18-3 at 1–2. Under the Lease Agreement, the lease term commenced on January 1, 2012, and concludes on December 31, 2021. *Id.* The Agreement requires Plaintiff to pay $350 per month in rent. *Id.* The Lease Agreement also states that Plaintiff will assume responsibility for small or minor maintenance of the Property, whereas "[l]arger maintenance" of the Property, such as maintenance of the roof, will be "burdened by" Nero as landlord. *Id.* The Lease Agreement does not expressly provide that Nero may terminate the Lease Agreement prior to the conclusion of the term. *Id.* at 1–2.

During the term of the Lease Agreement, Defendant initiated a foreclosure action in the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida—

---

Plaintiff's references to "General Allegation[s]," the Court does not construe Counts II, III, and IV as realleging paragraphs one through nine within Count I.

[3] The Tampa Chapter of the Federal Bar Association typically operates a Legal Information Program on Tuesdays from 1:00pm to 3:00pm on the second floor of the Sam Gibbons United States Courthouse and Federal Building, 801 North Florida Avenue, Tampa, Florida 33602. Through that program, *pro se* litigants may consult with a lawyer on a limited basis for free. Reservations for specific appointments may be made by calling (813) 301-5400; walk-ins are welcome if space is available. More information about the program is available on the Court's website at: http://www.flmd.uscourts.gov/litigants-without-lawyers under the link "Go to the Guide for Proceeding Without a Lawyer." Form pleadings for *pro se* parties in civil actions may be found at the following hyperlink: https://www.uscourts.gov/forms/pro-se-forms/complaint-civil-case. Additionally, a *pro se* litigant handbook prepared by the Federal Bar Association is available to download at the following hyperlink: www.fedbar.org/prosehandbook.

Case No. 12-CA-010683 (the "Foreclosure Action")—against Nero and all unknown tenants of the Property. Doc. 18 ¶6; *see* Doc. 18-6 at 1. Defendant acquired title to the Property through the Foreclosure Action. Doc. 18 ¶6; *see* Doc. 18-6 at 1–2. The foreclosure sale occurred on May 2, 2019, during which Defendant purchased the Property. *See* Docs. 18-2 at 1–2; 18-6 at 2. Defendant received the Certificate of Title for the Property on June 3, 2019. *Id.*

On June 4, 2019, Defendant served Plaintiff with a Notice of Termination, in which she demanded possession of the Property by July 8, 2019. Doc. 18 ¶8; Doc. 18-4 at 1. Defendant served an Amended Notice of Termination upon Plaintiff on July 8, 2019, which advised that: (1) the Lease Agreement was terminated upon the delivery date of the notice; (2) Plaintiff's occupancy was terminated ninety days following the date of the delivery of the notice; and (3) Defendant demanded possession of the Property on October 7, 2019. Doc. 18 ¶10; Doc. 18-5 at 1. Defendant also advised that she would seek a court order to remove Plaintiff from the Property, if he did not vacate the Property by October 7, 2019.  The Amended Notice of Termination provided that it superseded the Notice of Termination. *Id.* Because Plaintiff did not vacate the Property by October 7, 2019, Defendant moved the state court in the Foreclosure Action to issue a writ of possession. (Doc. 18-6 at 1–3).

In May of 2019, the City of Tampa cited the Property for violating the City's Code of Ordinances (the "Code"). Docs. 18 ¶¶33, 47; 18-6 at 7–12. These violations of the Code involved sections of the Code pertaining to: windows, doors, and hatchways; roof coverings; and paint. Docs. 18 ¶¶33, 47; 18-6 at 7–12. A hearing was

held on these violations on September 11, 2019. Docs. 18 ¶33; 18-6 at 7–12. Defendant admitted that the Property was in violation of the Code regarding habitability for rental properties and that the Property is uninhabitable. Doc. 18 ¶¶33, 48. Defendant continues to seek extensions from the City of Tampa in an effort to make the Property habitable. *Id.* at ¶33. Defendant previously claimed that she would make the Property habitable in compliance with the Code, but the Property has remained uninhabitable since May 6, 2019. *Id.* at ¶¶34, 49. Plaintiff relied upon these claims. *Id.* at ¶50.

Through the Amended Complaint, Plaintiff now lodges four claims against Defendant: (1) a claim for breach of contract; (2) a claim for breach of the implied warranty of habitability; (3) a claim for "intentional/misrepresentation"; and (4) a claim for intentional infliction of emotional distress.[4] *Id.* at ¶¶1–83. Defendant moves to dismiss the Amended Complaint under Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure. Doc. 19 at 1. Plaintiff responds that the Court should deny the Motion.[5] Doc. 25 at 10.

---

[4] Plaintiff attaches a document entitled "Notice of Removal of Civil Action" to his Amended Complaint, in which he purports to remove the Foreclosure Action from state court. Doc. 18-1 at 2. Plaintiff attached the same document to his initial complaint. Doc. 1 at 10–16. In dismissing the initial complaint as a shotgun pleading, the Court explained that Plaintiff filed this action directly in federal court, lodging four claims against Defendant, following a failed attempt at removing the Foreclosure Action in another case. Doc. 7 at 4 n.3. Indeed, in this action, Plaintiff brings four claims against Defendant, who serves as the plaintiff pursuing foreclosure in the Foreclosure Action. Placing aside the viability of Plaintiff's claims, the Court does not construe this case as a removed action, but instead one that was filed directly in federal court.

[5] Plaintiff also filed a "Supplemental Notice of Filing in Aid of Plaintiff's Opposition to Dismiss," which the Court construes as a "further memorandum" in support of his response to the Motion, in violation of Local Rule 3.01(c) of the then-operative Local Rules. Doc. 28. As such, the Court has not considered this supplemental notice.

## II.   LEGAL STANDARD

Rule 12(b) of the Federal Rules of Civil Procedure allows a party to raise certain defenses to claims for relief by motion. To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, mere naked assertions are insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

Rule 12(b)(7) serves as the vehicle to raise, by motion, the defense of failing to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Dismissal under Rule 12(b)(7) for failing to join an indispensable party under Rule 19 involves application of a two-part test. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d 667, 669 (11th Cir. 1982)). First, a court must determine whether the parties are

"required" parties. *Molinos Valle Del Ciabo, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011) (citing Fed. R. Civ. P. 19(a)). "Generally, an absent party is not required simply because its joinder would be convenient to the resolution of the dispute." *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1266 (M.D. Fla. 2014).

Under Rule 19(a), a person subject to service of process and the joinder of whom will not deprive the court of subject matter jurisdiction must be joined if: (1) without the party, "the court cannot accord complete relief among existing parties"; or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action" without the party may: (i) impair or impede the person's ability to protect the interest as a practical matter; or (ii) leave an existing party subject to a substantial risk of incurring duplicative or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a). "If a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). Next, "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) supplies several factors to consider in this analysis. Fed. R. Civ. P. 19(b).

Finally, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## III.   ANALYSIS

Defendant offers five bases for dismissal of the Amended Complaint. First, Defendant argues that Nero is an indispensable party under Rule 19, Fed. R. Civ. P, and that the Court should dismiss this action as a result of Plaintiff's failure to join him as a party. Doc. 19 at 4–7. Second, Defendant contends that, to the extent Count I is actually a claim for violation of the Protecting Tenants at Foreclosure Act ("PTFA"), the claim must be dismissed because the PTFA does not create a federal private right of action. *Id.* at 7. Third, Defendant argues that Counts II, III, and IV must be dismissed because there is no duty owed to Plaintiff as a result of no privity between Plaintiff and Defendant. *Id.* at 8. Fourth, Defendant argues that the litigation privilege bars each of Plaintiff's claims. *Id.* at 9–10. Fifth and finally, Defendant argues that Plaintiff fails to allege a claim for declaratory or injunctive relief. *Id.* at 10. For the following reasons, the Motion is due to be denied.

### A. Preliminary Considerations

In laying the factual groundwork for the Motion, Defendant asserts that this action originates from the Foreclosure Action, in which both Plaintiff and Nero expended considerable effort to stall the state court's entry of a final judgment and foreclosure sale. *Id.* at 2. Referencing the Foreclosure Action, Defendant states, in a footnote, that the Court "may take judicial notice of the underlying case and documents in it," citing to Federal Rule of Evidence 201(b).

Under Federal Rule of Evidence 201(b), which governs judicial notice of adjudicative facts, a court may take judicial notice of a fact that is not subject to

reasonable dispute because it: (1) "is generally known within the trial court's territorial jurisdiction"; and (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). A court may take judicial notice on its own, but "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1)–(2). An adjudicative fact is a fact that is "relevant to a determination of the claims presented in a case." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004). The Eleventh Circuit has cautioned that "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

Here, even if the Court construes this passing reference to Federal Rule of Evidence 201(b) as a request for the Court to take judicial notice of the Foreclosure Action, Defendant fails to provide any supporting argument or indicate which documents in the Foreclosure Action the Court should judicially notice. In the absence of any guidance, the Court is left to speculate as to those adjudicative facts that Defendant believes warrant judicial notice. Although not cited by Defendant, the Eleventh Circuit has also recognized that a court may take judicial notice of documents from another proceeding since those documents constitute public records and are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (internal quotation marks omitted). *But see United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order

only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.") However, Defendant does not submit any argument under this standard and, as discussed, fails to specify which documents he would like the Court to judicially notice. As such, to the extent that Defendant requests the Court to take judicial notice of the Foreclosure Action, the Court presently declines.[6] Defendant may move again for the Court to take judicial notice of certain documents at a later stage of the litigation, as appropriate.

### B. Litigation Privilege

The Court begins with Defendant's argument regarding the litigation privilege because Defendant asserts that the privilege bars each of Plaintiff's claims. This argument is presently unavailing, but Defendant may raise the privilege again on summary judgment, as appropriate.

"Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1274 (11th Cir. 2004). "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell,*

---

[6] Similarly, to the extent that she provides citations to other cases involving Plaintiff or Nero, Defendant does not sufficiently articulate whether she offers these cases for mere background information or in furtherance of some argument.

*P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). The Supreme Court of Florida

has offered the following rationale for the litigation privilege:

> The rationale behind the immunity afforded to defamatory
> statements is equally applicable to other misconduct occurring
> during the course of a judicial proceeding. Just as participants in
> litigation must be free to engage in unhindered communication,
> so too must those participants be free to use their best judgment
> in prosecuting or defending a lawsuit without fear of having to
> defend their actions in a subsequent civil action for misconduct.
> This does not mean, however, that a remedy for a participant's
> misconduct is unavailable in Florida. On the contrary, just as
> "[r]emedies for perjury, slander, and the like committed during
> judicial proceedings are left to the discipline of the courts, the bar
> association, and the state" . . . other tortious conduct occurring
> during litigation is equally susceptible to that same discipline.

*Id.* The privilege "applies across the board to actions in Florida, both to common-law

causes of action, those initiated pursuant to a statute, or of some other origin."

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007).

*But see Debrincat v. Fischer*, 217 So. 3d 68, 71 (Fla. 2017) (holding that the litigation

privilege did not bar the filing of a claim for malicious prosecution that was based on

adding a party defendant to a civil lawsuit); *Sun Life Assurance Co. of Can. v. Imperial

Premium Fin., LLC*, 904 F.3d 1197, 1219 (11th Cir. 2018) ("We do not think that . . .

any . . . Florida authority . . . requires us to extend absolute immunity to the filing of

a lawsuit where that specific act breaches a contract."). The litigation privilege may

also apply to statements or acts occurring during quasi-judicial proceedings. *See Pace

v. Bank of N.Y. Mellon Trust Co. Nat'l Ass'n*, 224 So. 3d 342, 344 (Fla. 5th DCA 2017)

("Statements or acts are covered by absolute immunity under the litigation privilege if

they are (1) made or committed in the course of judicial or quasi-judicial proceedings

10

and (2) are 'connected with, or relevant or material to, the cause in hand or subject of inquiry.'").

Because the litigation privilege constitutes an affirmative defense under Florida law, the privilege can be considered in resolving a motion to dismiss "when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (internal quotations omitted). *See also Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1112 n. 21 (M.D. Fla. 2019) (emphasizing, on summary judgment, that the defendants carried the burden of proving the applicability of the litigation privilege because the privilege constitutes an affirmative defense).

Defendant has not demonstrated the applicability of the litigation privilege at this stage of the litigation. To argue that the litigation privilege bars Plaintiff's claims, Defendant asserts that the claims "are all based on representations made in or related to litigation, namely the notice of termination of Plaintiff's tenancy, the attempts at obtaining a writs [sic] of possession," and the maintenance of the Property. (Doc. 19 at 9). Claiming that Plaintiff "essentially has three gripes," Defendant identifies three broad issues raised by Plaintiff, which Defendant asserts are "unquestionably related to the Foreclosure [Action] or the City of Tampa Code Enforcement action": (1) Defendant's provision of notice of termination of the tenancy to Plaintiff, as well as Defendant's scheduling of hearings to obtain a writ of possession; (2) that "Defendant owed a duty" to Plaintiff because of "home maintenance issues" when Nero owned the property and was listed as landlord on the lease; and (3) that Defendant's

interactions with the City of Tampa during the hearing regarding the Code violations transform "into actionable misrepresentations made to him." *Id.*

However, because the litigation privilege is an affirmative defense, Defendant must demonstrate that the complaint "affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson*, 372 F.3d at 1277 (internal quotations omitted). Defendant's argument does not cite any specific allegations within the Amended Complaint or provide any analysis of either the Foreclosure Action or the hearing before the City of Tampa. The provided argument does not demonstrate that the Amended Complaint "affirmatively and clearly shows the conclusive applicability" of this defense. As such, the Court declines to apply this affirmative defense at the motion-to-dismiss stage of the litigation. If Defendant raises the litigation privilege as an affirmative defense in answering the Amended Complaint, she may argue for the applicability of the privilege again on summary judgment.

### C. Failure to Join an Indispensable Party Under Rule 19

Defendant also moves for dismissal under Rule 12(b)(7), Fed. R. Civ. P., on the basis that Plaintiff has failed to join Nero. This argument is unavailing.

The Court set forth the guiding principles for the Rule 12(b)(7) analysis above. Under the two-step analysis, the Court must first determine whether Nero is a required party. Relevant here, Rule 19(a), which addresses persons to be joined if feasible, provides that "a person who is subject to service of process and *whose joinder will not deprive the court of subject-matter jurisdiction* must be joined" if, without the party, the Court "cannot accord complete relief among existing parties." Fed. R. Civ. P.

19(a)(1)(A) (emphasis added). Defendant argues that Nero, who served as Plaintiff's landlord, the owner of the Property at the time of the citation for violation of the Code, and the person in privity with Plaintiff in the Lease Agreement, is a necessary party whom Plaintiff failed to join because neither Plaintiff nor Defendant can be afforded complete relief without Nero, as "it is his lease with Plaintiff" that forms the basis of each count in the Amended Complaint. Doc. 19 at 5.

In support, Defendant argues that "complete relief cannot be had" without Nero because ten "important liability issues that directly involve" Nero must be addressed. *Id.* at 6. These "important liability issues" include: whether Nero is liable to Plaintiff under the lease; whether Nero is liable to Defendant for the alleged habitability issues; and whether Nero maintained property insurance. *Id.* Defendant hypothesizes Plaintiff could easily have joined Nero because Nero listed the same mailing address as Plaintiff in another action, but that "[i]t may have occurred to Plaintiff" that joinder of Nero "would destroy the diversity jurisdiction of this Court" because Nero is a Florida resident.[7] *Id.* at 6. Thus, Defendant claims that joinder of Nero to this action would destroy the Court's subject matter jurisdiction. In his response, Plaintiff agrees that joining Nero would deprive the Court of subject matter jurisdiction. Doc. 25 at 6.

---

[7] Additionally, Defendant claims that Plaintiff "obviously did not join" Nero because "the two have been working in cahoots with one another to prevent Defendant from rightfully taking possession of her property from them," as evidenced by the "tortured docket" in the Foreclosure Action. *Id.* The Court has already addressed Defendant's cursory mention of judicial notice.

Despite this assertion by Defendant, no evidence regarding Nero's citizenship is provided. Further, an individual's citizenship is determined by examining his or her domicile, *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002), and domicile is not synonymous with residence, *Molinos Valle Del Ciabo, C. por A.*, 633 F.3d at 1341–42. But, taking Defendant's assertion regarding Nero as true, the deprivation of subject matter jurisdiction by joining Nero would indicate that joinder is not feasible, which prompts an analysis under Rule 19(b). *E.g., Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682 (S.D. Fla. 2014) (stating that the court must consider if the action should proceed among existing parties or be dismissed, under Rule 19(b), "if the absent party's joinder is not feasible—i.e., joinder would defeat the court's subject-matter jurisdiction, the absent party is not subject to the court's personal jurisdiction, or the absent party properly objects to the venue of the action"); *Carballo v. GeoVera Specialty Ins. Co.*, No. 20-24368-CIV-MARTINEZ-BECERRA, 2020 WL 8413283, at *1 (S.D. Fla. Dec. 10, 2020) (same); *Hallums v. Infinity Ins. Co.*, No. 16-24507-CIV-MORENO, 2018 WL 1009277, at *3 (S.D. Fla. Feb. 20, 2018) ("Having found that Castillo's lessor must be joined as a party pursuant to Rule 19, the next inquiry is whether joinder is feasible, or will deprive the Court of subject matter jurisdiction.").

Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The factors for consideration include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
   (A) protective provisions in the judgment;
   (B) shaping the relief; or
   (C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

Here, Defendant simply concludes, after listing "important liability issues," that "[w]hen the four part analysis is evaluated with the facts here," Defendant will be prejudiced without the joinder of Nero, the prejudice cannot be lessened without his joinder, any judgment would be inadequate since "it appears most of Plaintiff's claims rightly belong against" Nero, and Plaintiff "has alternate remedies and may simply file suit in state court, where this matter belongs." Doc. 19 at 6–7. However, this conclusory analysis does not analyze any of the Rule 19(b) factors, despite Defendant's assertion that joinder of Nero is not feasible. Although she articulates "important liability issues," she does not analyze these issues under a Rule 19 lens. Additionally, Defendant's argument for joinder under Rule 12(b)(7) seems to conflate an argument that Nero is an *indispensable* party to the action with an argument that Defendant is the *wrong* party. In light of Defendant's argument, the Court declines to dismiss this action under Rule 12(b)(7).

### D. Lack of a Private Right of Action Under the PTFA

Defendant next argues that, although Plaintiff styles Count I as a claim for breach of contract, the claim "really is his continued gripe that Defendant served him with a notice of termination of his tenancy" in the Foreclosure Action, "which claims were dismissed with prejudice" in a prior action.[8] Defendant then claims that, to the extent that Plaintiff maintains a claim for violation of the PFTA, the claim must be dismissed because the PTFA does not create a federal private right of action. Doc. 19 at 7–8. Although Defendant is correct that the PTFA does not create a federal private right of action, this argument fails.

The PTFA "imposes certain requirements on successors in interest to foreclosed properties in order to protect tenants." *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 154 (6th Cir. 2014). Numerous courts, including this Court, have held that the PTFA does not create a federal private right of action. *E.g.*, *Mik*, 743 F.3d at 160; *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1173 (9th Cir. 2013); *Hammer v. Bank of Am.*, No. 8:13-cv-1910-T-33AEP, 2013 WL 3866532, at *3 (M.D. Fla. July 25, 2013). The framing of the PTFA in the terms of protecting tenants suggests that the PTFA was "intended to provide a defense in state eviction proceedings rather than a basis for offensive suits in federal court." *Logan*, 722 F.3d at 1173. The PTFA was permanently reauthorized in 2018 following its lapse in 2014. *Standard Summerwood LLC v. Jones*, No. 19-CV-02152-JCS, 2019 WL 3363788, at *1 (N.D. Cal. Apr. 23, 2019), *report and*

---

[8] Despite this reference to a prior action, Defendant offers no argument that these claims should be dismissed with prejudice now, as a result of a prior dismissal.

*recommendation adopted*, No. 19-CV-02152-RS, 2019 WL 3367534, at *1 (N.D. Cal. May 14, 2019).

Here, Plaintiff labels Count I as a claim for breach of contract. Doc. 18 at 3. Within Count I, he alleges that the PTFA applies to the "lease entered into by the Plaintiff and Nero, and Defendant, as Nero's successor as an owner of the property." *Id.* at ¶5. Plaintiff also alleges that he is a bona fide tenant under the PTFA and that Defendant assumed her ownership interest in the Property, subject to the Lease Agreement, pursuant to the PTFA. *Id.* at ¶6. Plaintiff offers other allegations regarding the PTFA, such as alleging that Defendant is not entitled to an exemption under section 702(a)(2) of the PTFA because she never asserted any intent to use the residence as her primary residence. *Id.* at ¶18.

The requisite liberal construction of the Amended Complaint does not demonstrate that Plaintiff brings a claim under the PTFA. Rather, Plaintiff's allegations discuss the applicability of the PTFA. Plaintiff alleges that Defendant breached the Lease Agreement through several actions, such as by interfering with Plaintiff's quiet enjoyment of the Property, failing to perform her duties under the Lease Agreement, declaring the Lease Agreement terminated, and demanding possession of the Property. *Id.* at ¶¶19–23. Thus, as Plaintiff asserts that Defendant breached the Lease Agreement, Plaintiff's claim is grounded in an alleged breach of contract and the alleged existence of a contractual relationship.[9] Therefore, as a result

---

[9] Plaintiff also claims in his response that he did not bring a claim under the PTFA and that Defendant's alleged failure to honor the terms of the Lease Agreement as the successor in

17

of Defendant's argument, the Court analyzes only whether Count I constitutes a claim arising under the PTFA, not the viability of Count I as a breach of contract claim.

### E. Lack of Privity Between Plaintiff and Defendant

Defendant also argues that Counts II, III, and IV of the Amended Complaint should be dismissed because there is no duty owed to Plaintiff as a result of a lack of privity. Doc. 19 at 8. Defendant argues that Plaintiff "conflates a separate City of Tampa Code Enforcement action" against the Property with "representations and duties owed to him individually." *Id.* Apparently in further support of this argument, Defendant contends that the Amended Complaint lacks any allegation that Defendant made a representation to him, in writing or verbally, other than terminating his tenancy. *Id.*

However, Defendant does not offer any legal support for her argument. Thus, Defendant does not address the extent to which privity or legal duties are required for these claims or the effect of their purported absence on the claims. Certainly, to the extent that Defendant refers to a duty of care, intentional torts do not require a duty of care.[10] *See Florez v. Broward Sheriff's Office*, 270 So. 3d 417, 421 (Fla. 4th DCA 2019)

---

interest "as an element" of the PTFA served as an "aspect" of the breach of contract claim. Doc. 25 at 7. Although this representation is perplexing, the Court nonetheless does not construe Count I as a claim under the PTFA.

[10] Count IV is a claim for intentional infliction of emotional distress. Count III is labeled as "Intentional/Misrepresentation," but Plaintiff describes the claim as one to recover monetary damages "due to the breach of duty of the *Intentional and/or Negligent* Misrepresentations of the Defendant." Doc. 18 ¶45 (emphasis added).

(stating that an intentional tort "does not necessitate the same showing of duty requisite to a negligence claim). Further, this argument is also unclear in the context of Plaintiff's allegations regarding the PTFA's applicability. Under the PTFA, in the case of a foreclosure on any dwelling or residential real property, any immediate successor in interest to the property under the foreclosure assumes such interest subject to the rights of a bona fide tenant. *See* Pub. L. No. 111-22, § 702, 123 Stat. 1661. Therefore, in the absence of any legal support or further factual support, this argument fails.

## F. Failure to Allege Grounds for Declaratory or Injunctive Relief

Finally, Defendant argues that the Amended Complaint should be dismissed "for failure to state a cause of action for declaratory or injunctive relief." Doc. 19 at 10. In support, Defendant cites two cases: one pertaining to injunctive relief and one pertaining to declaratory relief. First, for injunctive relief, Defendant cites *Jones v. Brown*, in which the Court, in considering, a motion for temporary restraining order and preliminary injunction, set forth the requirements to obtain an injunction. No. 3:11-cv-865-J-34TEM, 2012 WL 12897951, at *1 (M.D. Fla. June 25, 2012). Unlike *Jones*, Plaintiff does not seek a temporary restraining order or preliminary injunction. Rather, Plaintiff requests injunctive relief in his prayers for relief under Count I and Count II. Indeed, injunctive relief is a remedy, not an independent claim for relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092,

1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract."). As such, this argument regarding injunctive relief fails.

Second, for declaratory relief, Defendant argues that the Amended Complaint "fails to allege the necessary elements or any facts that would support a claim for declaratory relief," even though "Plaintiff prays for declaratory relief." Doc. 19 at 10. In support, Plaintiff relies on *Zurich American Insurance Company v. Southern-Owners Insurance Company*, in which the Court quoted Supreme Court case law regarding the Declaratory Judgment Act to emphasize that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (internal quotation marks omitted) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In his prayers for relief for Count I and Count II, Plaintiff seeks declaratory judgments and other declaratory relief. Plaintiff also labels the Amended Complaint as one for "declaratory relief/injunctive relief." Doc. 18 at 1. But, while Defendant now claims that Plaintiff has failed to "allege the necessary elements or any facts that would support such a claim," she does not offer the elements or facts that are purportedly necessary, provide any analysis of the Amended Complaint or its present deficiencies in this respect, or explain why such a failure warrants dismissal of the entire pleading. Therefore, this basis for dismissal is denied.

## IV.   CONCLUSION

Accordingly it is **ORDERED**:

20

1. Defendant's Motion to Dismiss Amended Complaint, Doc. 19, is **DENIED**.

2. Defendant Jennifer McClean shall answer the Amended Complaint within

   **FOURTEEN (14) DAYS** from the date of this Order.

   **DONE AND ORDERED** in Tampa, Florida on February 26, 2021.

   Charlene Edwards Honeywell
   United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any